McPHEETERS *v.* BIRKHOLZ.

1. CONTRACTS—CONSTRUCTION OF WRITTEN LEASE FOR COURT.
    In a tenant's action against his landlord for forcible
    eviction, the construction of the lease, which was in writ-
    ing, was for the court.[1]

2. LANDLORD AND TENANT—LEASE—MODIFICATION.
    The definite term of one year provided for in a written
    lease is not modified by other provisions for the sale of
    personalty extending over several years, and for the con-
    tinuance of the lease beyond one year at the pleasure of
    the parties.[2]

3. SAME—ABANDONMENT—ASSIGNMENTS—BREACH OF COVENANT.
    A tenant's action in putting his agent in charge of a leased
    farm during his temporary absence did not amount to
    an abandonment of the premises, nor was it in effect an
    assignment, breaching a covenant on the subject.[3]

4. APPEAL AND ERROR—QUESTION FOR REVIEW.
    Defendants may not complain that a question on which
    plaintiff was entitled to a peremptory instruction was left
    to the jury.[4]

5. LANDLORD AND TENANT—FAILURE TO SIGN LEASE—ESTOPPEL.
    That defendant wife, who did not sign the lease, is es-
    topped from questioning its validity on that ground, *held*,
    established by the record.[5]

6. SAME—AIDING AND ABETTING FORCIBLE EJECTION—QUESTION FOR
   JURY.
    Whether defendant wife aided and abetted in the forcible
    eviction of plaintiff, *held*, under conflicting testimony,
    properly submitted to the jury, as preliminary to holding
    her liable in damages.[6]

7. SAME—EVIDENCE—SUFFICIENCY.
    That plaintiff was evicted in a forcible and unlawful
    manner, *held*, established by the record.[7]

[1]Landlord and Tenant, 35 C. J. § 493; [2]Id., 35 C. J. § 474; [3]Id.,
35 C. J. §§ 80, 275; [4]Appeal and Error, 4 C. J. § 2891; [5]Estoppel,
21 C. J. § 269; [6]Landlord and Tenant, 36 C. J. § 1018;[7]Id., 36 C.
J. § 1016.

**8. Same—Lease on Shares Personal Contract.**

A lease on shares is a personal contract, and a covenant by a lessee to give the business his personal attention is implied where not so expressly covenanted and promised.[8]

**9. Same—Right of Landlord to Forfeit Lease for Breach.**

A landlord is not entitled to forfeit the lease and re-enter and repossess a farm leased on shares on a breach of the tenant's covenant to give the business his personal attention by putting another in charge during his temporary absence, in the absence of a condition in the lease giving him such right.[9]

**10. Trover and Conversion—Excessive Verdict.**

A verdict for $1,650 for the conversion of lessee's interest in the personal property, *held*, neither excessive nor against the great weight of the evidence.[10]

Error to Berrien; White (Charles E.), J. Submitted June 2, 1925. (Docket No. 3.) Decided October 1, 1925.

Case by Archibald A. McPheeters against Arthur N. Birkholz and others for a forcible eviction from leased premises. Judgment for plaintiff. All parties bring error. Affirmed.

*Stratton & Evans* (*Walter Williams*, of counsel), for plaintiff.

*George W. Bridgman* and *G. M. Valentine*, for defendants.

CLARK, J. Defendants A. W. Birkholz, his wife Maria, and their son Arthur N., owned 380 acres of farm land, on which were buildings, stock, implements and tools. Part of the land was owned by the son, part by the wife and part by the husband and wife. They advertised for a tenant. Plaintiff, a young married man, an agriculturist, taught and trained, lived in Minnesota. He answered the advertisement.

[8]Landlord and Tenant, 36 C. J. § 1928 (Anno); [9]Id., 36 C. J. § 1757; [10]Trover and Conversion, 38 Cyc. p. 2104.

He met the Birkholz men. A lease on shares was prepared and signed by the three men on June 16, 1917. Plaintiff learned later of the interest of Mrs. Birkholz. The writing contained an undertaking to sell and to purchase "an undivided one-half interest in" the stock, implements and tools, on which plaintiff as purchaser paid $1,000 down, remainder

". . . . . . . . five hundred dollars on or before June 16, 1919, and the sum of one thousand dollars or more on the 16th day of June, in each year thereafter until the entire sum of sixty-six hundred and fifty-six dollars is paid in full; with interest." * * *

The lease was "for the term of one year from and including the 16th day of June, A. D. 1917," and we quote:

"This agreement may be continued from year to year at the pleasure of the parties hereto, but may be terminated at the expiration of any year by either party giving to the other three months' notice in writing of his wish to have the same end."

The lease provides for the appointment of arbitrators to settle disputes, that

"The party of the first part agrees to recompense the party of the second part for any unexhausted improvements which said second party may make at his own expense during the term of this lease."

and

"At the expiration of this lease (unless it shall be renewed) or if it be sooner terminated, the parties hereby agree that all jointly owned property shall be disposed of to the best possible advantage, or divided in such a manner as may be voluntarily agreed upon, or as determined by a board of arbitrators hereinabove provided for."

Contrary to the language of the lease, defendants were permitted to live in the main farm dwelling. Plaintiff, his wife, and the employees, lived in the

tenant house.    Trouble, dispute, unpleasantness soon arose, due, as plaintiff says, to malicious meddling of defendants, and, as defendants say, to plaintiff's inattention and indifference to duty.    Crops were not as hoped for.    Corn of large acreage was frosted. Defendants had testimony that plaintiff sought to sell to them his interest in the personal property and under the lease, which plaintiff denied.    Plaintiff's wife expected to be confined.    In her condition she desired to avoid unpleasantness and she wanted to be near her mother who lived in Minnesota.    About September 15th, plaintiff, with his wife, and taking household goods, went to Minnesota, leaving his employees in charge of and working the farm.    He gave to defendants the following writing:

"Sept. 14, 1917.
"BIRKHOLZ STOCK FARM.
"Mr. A. W. BIRKHOLZ, and
"Mr. A. N. BIRKHOLZ.
"*Sirs:*    I am leaving tomorrow and have given Mr. Ed. Williams full charge of the farm in my absence, although I am still handling the place and he will run the place according to my instructions.    I wish to notify you to not interfere in any way with my men in carrying on the farm operations according to instructions.    If you wish to consult anyone concerning the operations of the farm, you should confer with me.    In case you wish to use any of the personal property or stock, you must get permission before taking same.
"Very truly yours,
"A. A. McPHEETERS.
"P. S.    All communications will reach me addressed to Northfield, Minn.    A. A. McP.    (B. J. McP.)"

That plaintiff then intended a temporary absence is not controverted by the record.    His wife's illness occurred about three months later.    Within five days after said September 15th, defendants repossessed and re-entered the premises by force, to the exclusion of

plaintiff and his employees, and they also took the personal property.

Plaintiff's declaration is in five counts, quoting from defendants' brief:

"The first count charges forcible eviction from the premises under section 13376 of the Compiled Laws of 1915, of this State.

"The second count charges a conspiracy by the defendants to cheat and defraud the plaintiff.

"The third count makes the same allegation of facts as do the former counts, but alleges that there was an oral agreement or contract separate from the written lease.

"The fourth count is in trover for the conversion of personal property.    Alleged that the plaintiff was the owner of a half interest therein.

"The fifth count is the common counts in assumpsit."

We quote sections 13229 and 13376, 3 Comp. Laws 1915:

"(13229)    SECTION 1.    No person shall make any entry into lands, tenements or other possessions, but in cases where entry is given by law; and, in such cases, he shall not enter with force, but only in a peaceable manner."

"(13376)    SEC. 19.    If any person shall be ejected or put out of any lands or tenements in a forcible and unlawful manner, or being put out, be afterwards held and kept out by force, he shall be entitled to maintain an action therefor, and shall recover therein three times the amount of damages assessed by the jury or a justice of the peace in the cases provided by law."

Late in the trial the court eliminated all but the first and fourth counts and he submitted the case under such counts.    Under the first count plaintiff had verdict for $1,412, and under the fourth count verdict for $1,650.    The damages assessed by the jury under the first count were trebled, making the result $4,236, and judgment was entered for a total of $5,886.    Both sides assign error.

Plaintiff contends that the court erred in instructing the jury that the lease was for but one year. The writing, as quoted, says that the term is one year. But plaintiff argues that other provisions, stated or set forth above, particularly that relating to the purchase of the personal property, require a holding that the term was more than one year. Construction of the lease, if it was open to construction, was for the court. He was right, clearly. The language fixing a definite term is not modified by the other provisions. And that the parties might, at their pleasure, continue the lease beyond one year does not, of itself, warrant a holding that the term was so enlarged.

Defendants say that plaintiff abandoned the premises, and that therefore they had a right to reenter, citing cases. There is no evidence of abandonment. They also insist that plaintiff's putting Williams in charge during his absence was in effect an assignment, breaching a covenant on the subject. There was no assigning and no evidence of it. *Vincent v. Crane,* 134 Mich. 700.

Mrs. Birkholz did not sign the lease. That she is estopped to assert her interest to defeat it is established. Plaintiff was entitled on the facts to a peremptory instruction that she was bound by the lease. That the court, out of an abundance of caution, left the question to the jury, as he did, defendants may not complain.

There was evidence *pro* and *con* that Mrs. Birkholz aided and abetted in the eviction of plaintiff. Whether she did or not was properly submitted to the jury, as preliminary to holding her liable in damages.

After closing of proofs, in a colloquy between court and counsel, the court expressed the opinion that it had been established that plaintiff had been evicted in a forcible and unlawful manner, but he said:

"As long as the question of damages must be sub-

mitted to the jury anyway, and the question of the liability of Mrs. Birkholz, I think I will submit the question to the jury."

He did.    Plaintiff was entitled to a peremptory instruction.    Forcible entry is defined in *Chylowski* v. *Steinberg,* 193 Mich. 547.    Defendants will not be heard to complain of submitting the question to the jury.

Defendants say:

"The lease was a personal contract, that is, it was to be performed by the plaintiff in person.    \*    \*    \* We insist that when the plaintiff left the premises and attempted to put another man in his place to conduct the farm, that he lost all rights to the possession thereof."    \*    \*    \*

We find in the writing no express covenant or promise of the plaintiff that he would give all his time and attention to the business.    He did promise to take full charge of the farm, and to furnish necessary labor.    There are other covenants relating chiefly to husbandry.

A lease on shares is a personal contract.    *Randall* v. *Chubb,* 46 Mich. 311 (41 Am. Rep. 165).    In any event that plaintiff was to give the business his personal attention may be said to be an implied covenant.    But granting, as contended, that plaintiff so expressly covenanted and promised, and granting too that his putting Williams in charge and his leaving and his absence constituted a breach of the covenant, defendants acquired thereby no right to forfeit the lease, and no right to re-enter.

The lease contains no condition that a breach by plaintiff of any or all of the covenants would give defendants the right to terminate the tenancy.    The common method in drafting leases is to gather some or all of the covenants, by reference, into a condition subsequent, an agreement by the parties, that a breach

by the tenant of any or all of the covenants on his part shall give the landlord the right to terminate the tenancy by means and in a manner usually indicated. The lease contains no such condition. The defendants here had no right to forfeit, or to re-enter and repossess the premises, because of a breach of the covenant in question, whether express or implied. See *Pickard* v. *Kleis*, 56 Mich. 604, where covenant and condition are distinguished. See, also, *Hanaw* v. *Bailey*, 83 Mich. 24 (9 L. R. A. 801); *Somers* v. *Loose*, 127 Mich. 77; *Wakefield* v. *Mining Co.*, 85 Mich. 605; *Hough* v. *Brown*, 104 Mich. 109; 1 Underhill on Landlord and Tenant, p. 620; 2 Tiffany on Landlord and Tenant, p. 1366; 36 C. J. p. 598.

This holding is not affected by the statute relating to summary proceedings to recover the possession of lands. 3 Comp. Laws 1915, § 13240 *et seq.; Pickard* v. *Kleis, supra; Langley* v. *Ross*, 55 Mich. 163.

An exception to the general rule that a breach of a covenant does not of itself give the landlord the right to terminate the tenant's interest may have been made by bench law in this jurisdiction in case of an assignment by the lessee without consent of the lessor. *Wray-Austin Machinery Co.* v. *Flower*, 140 Mich. 452 (but see note 2 Tiffany on Landlord and Tenant, 1365, and 1 Underhill on Landlord and Tenant, 622); and particularly if the lessee is a share tenant. *Lewis* v. *Sheldon*, 103 Mich. 102; *Randall* v. *Chubb, supra.*

If defendants when so taking the land had had a right to possession of it a different question would be presented. *McIntyre* v. *Murphy*, 153 Mich. 342 (15 Ann. Cas. 802).

The only point made against trebling the damages under the first count is that no case of forcible and unlawful eviction was made out. That matter has been disposed of, and we are not called upon therefore to consider further such damages.

We find no prejudicial error in the charge under the fourth count, and we agree with the trial court in holding the verdict thereon to be neither excessive nor against the great weight of the evidence.

Nothing will be gained by discussion of other questions. They have been considered.

Judgment affirmed but without costs to either party.

McDONALD, C. J., and BIRD, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred.    WIEST, J., did not sit.